**Seymour KLONER, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**Nos. 770, 900, 901, Dockets 75–2136, 75–2156, 75–2157.**

United States Court of Appeals, Second Circuit.

Argued March 1, 1976.

Decided May 10, 1976.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Herbert G. Johnson, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Josephine Y. King, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for respondent-appellee.

Before MANSFIELD, TIMBERS and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

Seymour Kloner appeals from an order entered on September 22, 1975, in the United States District Court for the Eastern District of New York, by Judge Leo F. Rayfiel, denying three consolidated post-conviction applications for habeas corpus relief sought pursuant to Title 28 U.S.C. § 2255. The applications specifically challenge (1) the validity of appellant's plea of guilty to one count of bank larceny, 18 U.S.C. § 2113(b), (2) the conditions of his incarceration at the Queens House of Detention, and a state facility, prior to his removal to federal facilities, and (3) the validity of proceedings by which his parole was revoked by the United States Board of Parole. We affirm the denial of the first two applications but grant the application pertaining to the procedures by which appellant's parole status was revoked.

On February 19, 1971, appellant was arrested by New York City police for stealing nearly $2,000 from a Brooklyn savings and loan association. He confessed his commission of the crime to agents of the Federal Bureau of Investigation, detailing his actions inside the bank, including his use of a toy pistol in carrying out the robbery. After arraignment and indictment appellant on September 2, 1971, entered a plea of guilty to the second count of a two-count indictment charging him with bank larceny in violation of 18 U.S.C. § 2113(b).

The procedures followed by the district court during the pleading session are the major source of Kloner's contention in his request for collateral relief. After his attorney apprised the district court of appellant's intention to plead guilty to Count Two, Judge Rayfiel read aloud that count, informed appellant of his right to trial by jury, advised him of the maximum sentence that could be imposed, and elicited assurances that he was voluntarily entering the plea. Receiving acceptable answers, the district court accepted the plea. When the Assistant United States Attorney suggested that "it might be beneficial to establish a factual basis for the plea," the Judge noted that he had already read the charge and proceeded to ask appellant: "Did you commit the act?" Both appellant and his attorney thereupon informed the district court that a full confession was given to the F.B.I. Satisfied, Judge Rayfiel on November 19, 1971, sentenced appellant to imprisonment for five years subject to the immediate parole eligibility provisions of 18 U.S.C. § 4208(a)(2).

On September 17, 1973, after serving 22 months, Kloner was released on parole. However, on January 24, 1975, he was again arrested and charged with parole violations. At the revocation hearing held on February 24, 1975, the United States Board of Parole considered four grounds for revoking appellant's parole: failure to report a change of permanent address, leaving the area of parole·supervision without acquiring permission, and two arrests on charges of grand larceny while on parole. The decision of the Board specified the former two grounds as the bases for revocation, while disregarding the subsequent arrests for which proceedings in state court remained pending.[1] The Board ordered appellant re-incarcerat-

1. Kloner was later convicted of these charges in the state court in November, 1975.

ed pending a further institutional review to be held in January 1977. The Regional Director of the Board of Parole and the National Appeals Board upheld the revocation ruling.

In separate *pro se* habeas corpus applications, appellant petitioned for relief on a variety of grounds. Upon Judge Rayfiel's denial of the consolidated applications on September 22, 1975, appeal was taken to this court and the Legal Aid Society appointed to represent appellant.

## DISCUSSION

Appellant first seeks to upset his 4½-year old guilty plea as violative of Rule 11, F.R. Cr.P.[2] "Since a guilty plea is the equivalent of a conviction and involves the defendant's waiver of precious constitutional rights," *Saddler v. United States*, 531 F.2d 83 (2d Cir. 1976), *citing Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927); see also *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court has emphasized that there must be strict adherence to its requirements in the acceptance of a guilty plea. Accordingly, in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), exercising its supervisory power over the federal courts, the Court determined that the sanction for noncompliance would thereafter be to set aside the plea and to offer the defendant the opportunity to plead anew to the charge. Appellant here seeks this relief.

No one disputes that the district court properly inquired into the voluntariness of defendant's plea and made plain the possible sentence that could result therefrom. However, seeking to bring himself within the ambit of the *McCarthy* rule, appellant first argues that the district court failed adequately to instruct him regarding the full range of constitutional rights waived or forfeited by his plea. In particular, while the district court unquestionably informed appellant of his right to trial by jury, petitioner complains that "he never even alluded to the right to remain silent or the right to confrontation." Consequently, he argues, the plea must be vacated. We disagree.

A guilty plea will not be invalidated simply because of the district court's failure, during its Rule 11 inquiry, to enumerate one or more of the rights waived by the defendant. See, e. g., *Wilkins v. Erickson*, 505 F.2d 761 (9th Cir. 1974); *Lockett v. Henderson*, 484 F.2d 62 (5th Cir. 1973), *cert. denied*, 415 U.S. 933, 94 S.Ct. 1448, 39 L.Ed.2d 492 (1974); *Davis v. United States*, 470 F.2d 1128 (3d Cir. 1972); *Sappington v. United States*, 468 F.2d 1378 (8th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *Wade v. Coiner*, 468 F.2d 1059, 1061 (4th Cir. 1972); *cf. United States ex rel. Hill v. Ternullo*, 510 F.2d 844, 845 n. 1 (2d Cir. 1975); *Korenfeld v. United States*, 451 F.2d 770, 773 (2d Cir. 1971). Instead, since "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case," *McCarthy v. United States*, 394 U.S. at 467 n. 20, 89 S.Ct. at 1171, 22 L.Ed.2d at 426; *Seiller v. United States*, Dkt. No. 75-2002, Slip. Opin. 6525-26 (2d Cir. Dec. 1, 1975); *Irizarry v. United States*, 508 F.2d 960, 965 n. 4 (2d Cir. 1975), a resulting plea may be upheld as long as the district judge has adequately informed the defendant of "the alternative courses of action open to" him, *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970), so that the defendant has not, either because of ignorance or misinformation, been misled into entering the plea. We are satisfied that this requirement has been met in the present case. The educational background of appellant,[3] the close participation of his attorney during the pleading session, and the district court's reminder to

2. In pertinent part, Rule 11 provides:
 "The court . . . shall not accept [a plea of guilty] . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the

consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

3. Appellant has completed one year of college.

the defendant that "you have a right to a trial before a jury if you wish one, and you have a right to have witnesses appear and testify in your behalf," all lead to the conclusion that he was sufficiently aware of the consequences of and alternatives to his guilty plea to render his plea a voluntary and intelligent one.

■ Similarly, appellant's suggestion that the district court neglected to establish a factual basis on the record sufficient to support the plea is not persuasive in this instance. It is true that the district judge, prompted by the prosecutor, did little more than to recite the charge in the indictment and to elicit from both defendant and his counsel statements that defendant had confessed to the crime. Ordinarily the mere recital of the charge coupled with an admission of guilt will not suffice to demonstrate a factual basis for a guilty plea. But here we are not faced with a complex crime such as a conspiracy in which interlocking and subtle elements may be capable of generating confusion, *Seiller v. United States, supra*, at 6538–39, or with a case involving multiple defendants where the guilt of a particular defendant may have been mistakenly inferred from the acts of others, *United States v. Steele*, 413 F.2d 967, 969 (2d Cir. 1969). Nor is this an instance where the defendant acknowledged his guilt in an ambiguous fashion, *Rizzo v. United States*, 516 F.2d 789, 794 (2d Cir. 1975), or where the defendant's response constituted little more than a "limited or conditioned" admission of guilt, coupled with a "protestation of innocence," *Hulsey v. United States*, 369 F.2d 284, 287 (5th Cir. 1966). Instead, the indictment specified conduct constituting a relatively simple offense—that the defendant "knowingly and wilfully took and carried away [from a savings and loan association] with intent to steal, money in excess of $100.00." Thus the district court's reading of the charge, to which the defendant acknowledged guilt, set forth the underlying factual elements of the crime. Furthermore, the court was made aware of the existence of a confession in which he had confirmed in detail his commission of the crime.

In light of the totality of the circumstances surrounding the district court's acceptance of the plea, we hold that Rule 11's "factual basis" requirement was satisfied. It therefore becomes unnecessary to consider the other grounds urged by the Government for affirmance of the district court's order, such as the petitioner's alleged failure to raise his Rule 11 claim in the district court or the contention that collateral relief under § 2255 is unavailable to remedy non-compliance with Rule 11. Cf. *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109, 118 (1974); *Hill v. United States*, 368 U.S. 424, 426, 82 S.Ct. 468, 470, 7 L.Ed.2d 417, 420 (1962). But see *Seiller v. United States, supra; Rizzo v. United States, supra; Irizarry v. United States, supra*. However, our holding should not be construed as an endorsement of the procedure followed by the district court in this case. The frequency with which we encounter questionable compliance with Rule 11 on the part of judges accepting guilty pleas indicates that the district courts would be well advised to adopt practical measures such as the preparation of specific instructions designed to eliminate any basis for a claim of non-compliance with Rule 11. A simple procedure that has been successfully used by some judges is to prepare and distribute to the defendant and his counsel in advance of the entry of the guilty plea a written outline of the rights being waived, which is then read and signed by the defendant, accompanied by a signed certificate by his counsel stating that he has explained the contents to his client. In addition some judges have used a printed form listing each of the constitutional rights to be mentioned to the defendant and his counsel before accepting the plea. While we do not advocate any prescribed form as the touchstone for compliance with Rule 11, we are confident that methods can be devised which will insure against failure to meet its requirements.

■ Appellant's contention that the parole revocation procedures followed in this case were deficient raises a more serious

issue, one aspect of which requires a re-mand. The hearing examiner's summary of decision indicates that the Parole Board based its revocation upon two grounds: (1) Kloner's failure to report his change of residence to his parole officer, and (2) his temporary trip to Mexico without official permission. The second ground, however, was not the subject of any notice to Kloner prior to the revocation hearing, even though the alleged violation apparently was brought to the attention of the Regional Director of the Board of Parole some six months earlier.[4] The failure to include a "written notice of the claimed violations of parole" violates "the minimum require-ments of due process" outlined by the Su-preme Court. See *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972); cf. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (revocation of probation); *Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935, 955 (1974) (pris-on disciplinary proceedings); *Cardaropoli v. Norton,* 523 F.2d 990, 996 (2d Cir. 1975) (special offender classifications). While the government emphasizes that Kloner in any event was permitted to rebut both charges once the hearing actually commenced, this opportunity is not an adequate substitute for prior notice, which enables the parolee to "marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell, supra,* 418 U.S. at 564, 94 S.Ct. at 2978, 41 L.Ed.2d at 955. Not having been given advance notice, appellant did not have the opportunity, which he now desires, to mitigate the significance of the violation, see *Morrissey v. Brewer, supra,* 408 U.S. at 488, 92 S.Ct. at 2603, 33 L.Ed.2d

at 498, by demonstrating the existence of a compelling medical reason for his trip and by establishing his understanding, claimed to have been derived from his parole offi-cer, that it would not lead to revocation of parole.

The due process requirement of notice, overlooked here, is designed to insure a defendant of the opportunity to prepare and present just such a defense. The denial of due process in this respect was not reme-died by giving him proper notice with re-spect to the first ground for revocation (Kloner's failure to notify parole authorities of his change of address) or by the possible sufficiency of this ground alone to support revocation. Since the Board relied upon *both* violations as the basis for its decision, it would be sheer conjecture to speculate what action it would have taken if proper notice had been furnished with respect to the second claim and if the defendant had had the opportunity to prepare and present mitigating evidence in rebuttal. Accord-ingly, we grant appellant's application for habeas corpus relief insofar as it pertains to the adequacy of his parole revocation hear-ing.[5] A new hearing may be initiated fol-lowing the giving of constitutionally ade-quate notice.

 Finally, appellant's claims with re-spect to the conditions of his incarceration in the Queens House of Detention fall far short of a violation cognizable under § 2255. Federal authorities cannot be held responsi-ble for the alleged failure of a state facility to provide adequate medical treatment, reli-gious facilities and kosher food. The appli-cation therefore alleges no claim for relief applicable to the United States.

---

**4.** In a letter dated August 30, 1974, two proba-tion officers notified the Board of Parole of Kloner's visit to Mexico during the previous month. They indicated, however, that "[w]e are not requesting a warrant at this time. . . ."

**5.** We need not pass on the contentions raised in appellant's reply brief that the prior hearing was tainted by the consideration of the undis-closed, confidential information, or that certain parties involved in the hearing acted improper-ly. The validity of these allegations in any case

cannot be determined from the truncated sum-mary of proceedings or sealed records provided to us. We note in passing, however, that in the event of a rehearing the hearing officer, while entitled to protect highly sensitive and confi-dential information from disclosure, must make every reasonable effort to afford the parolee the broadest possible opportunity for rebuttal, confrontation, and cross-examination with re-spect to the charges raised against him. See *Morrissey v. Brewer, supra,* 408 U.S. at 487, 92 S.Ct. at 2602, 33 L.Ed.2d at 497.

The order of the district court is affirmed except as to that part upholding the revocation of parole, which is reversed. The case is remanded for further proceedings consistent with this opinion.