**William TOOMEY**

v.

**Anthony YOUNG, Acting Warden, Federal Correctional Institution, Danbury, Connecticut, et al.**

**Civ. No. H–77–445.**

United States District Court, D. Connecticut.

Dec. 9, 1977.

---

Judith Resnik, New Haven, Conn., for petitioner.

Diana Garfield, Asst. U.S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, an inmate at Federal Correctional Institution, Danbury, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that the decision of the United States Parole Commission to revoke his mandatory release status is unlawful. A brief recitation of the facts will help illuminate the issues.

In August, 1970, petitioner began serving a five-year federal sentence imposed by the District of Massachusetts. On October 15, 1973, he was mandatorily released "as if on parole" pursuant to 18 U.S.C. § 4164. Under the terms of the statute his status as a mandatory releasee was to continue until 180 days before the end of his maximum term, i. e., until January 12, 1975.

A parole violator warrant was requested by petitioner's probation officer on October 2, 1974, and was issued by the Board of Parole (now Commission) on October .17, 1974. The warrant was based on (1) failure to submit supervision reports, (2) four state charges arising from petitioner's arrest on ·September 15, 1974, in Massachusetts, and (3) petitioner's failure to report that arrest. The violator warrant was held in abeyance pending the disposition of state charges. Those charges were never prosecuted and were finally dismissed on November 10, 1977. The Commission inquired about the status of the state charges on February 28, 1975, June 27, 1975, and October 3, 1975, and received status reports from the federal probation officer in Massachusetts each time.

In April, 1975, petitioner was arrested on federal embezzlement charges in Massachusetts and was convicted in November of that year. On December 5, 1975, petitioner began serving his three-year sentence on that conviction. On December 22, 1975, a supplement based on this conviction was added to the original violator warrant. The conduct underlying this conviction apparently occurred before January 12, 1975, while petitioner was still under mandatory release supervision. The supplemented warrant was lodged as a detainer against petitioner in February, 1976.

On June 18, 1976, petitioner had a parole hearing on the embezzlement sentence and a dispositional review of the detainer. On June 30, 1976, he was notified that parole had been denied and that the detainer would stand. Another review of the detainer was held in November, 1976, and again the decision was to let it stand.

On August 1, 1977, petitioner was notified that his mandatory release date on the embezzlement sentence was August 31, 1977. The Commission ordered that the violator warrant be executed and a mandatory release revocation hearing was held on August 23, 1977. At the end of the hearing petitioner was told he would receive notice of the determination of the Commission within 21 days. On August 31, 1977, this petition was filed and a hearing held. Recognizing that if petitioner were successful on the merits, there would be no lawful basis for continued incarceration beyond August 31, 1977, this Court ordered petitioner released on bond pending the disposition of the habeas petition. As a result of the August 23, 1977, revocation hearing, the Commission decided the following: (1) to revoke the mandatory release of October 15, 1973, (2) that none of the time spent on. mandatory release be credited against the time to be served on the balance of the 1970 sentence, and (3) that re-parole be denied.

In the present action petitioner challenges both the original violator warrant and the supplement based on the embezzlement charges as a basis for revocation. I will consider each in turn.

I.

Petitioner first claims that the Commission cannot properly rely on the original violator warrant as a basis for revocation because of the delay between the issuance of the warrant on October 17, 1974, and the execution of the warrant on August 23, 1977.

Petitioner's initial claim is that when a mandatory releasee is at liberty, the Commission's regulations require that a revocation warrant be executed prior to a petitioner's mandatory release date. As authority the petitioner cites 28 C.F.R. § 2.52(c) (1974) (now § 2.46). That provision, however; merely says that the issuance of a warrant does not end supervision, and that supervision continues until the warrant is executed or until the sentence expires. The regulation is inapposite. Contrary to petitioner's claim, a warrant may be executed after the end of supervision so long as it was issued during supervision. *Castillo v. United States*, 391 F.2d 710, 711 (2d Cir. 1968); *Avellino v. United States* , 330 F.2d 490, 491 (2d Cir.), *cert. denied*, 379 U.S. 922, 85 S.Ct. 280, 13 L.Ed.2d 336 (1964); *United States ex rel. LiPuma v. Gengler*, 411 F.Supp. 948, 950 (S.D.N.Y. 1976).

Petitioner's second objection to the original warrant is that he was deprived of

a prompt probable cause determination and a local revocation hearing. It is true that after *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), petitioner is entitled under due process to have the warrant executed without unreasonable delay and to have a timely revocation hearing. But as Judge Weinfeld noted in *LiPuma, supra*, "stating that he is entitled to such due process begins rather than ends inquiry." 411 F.Supp. at 950.

■ *Morrissey, supra*, and the Commission's own regulations then in effect, 28 C.F.R. § 2.54 (1974) (now 28 C.F.R. § 2.48), require a prompt probable cause determination after a prisoner is retaken on a violator warrant. Here, however, the warrant was not executed and the prisoner not retaken. The issue therefore is whether or not the Commission was obligated to execute the warrant sooner than it did. I conclude it was not.

The original warrant was issued as a result of an arrest on state charges, but execution was ordered delayed pending the disposition of those charges. Such a delay is specifically authorized by current regulations, 28 C.F.R. § 2.44(b) (1976), and was clearly contemplated by the regulations then in effect. 28 C.F.R. § 2.52(c) (1974) (now at 28 C.F.R. § 2.46 (1976)). Moreover, the practice has been explicitly approved in this Circuit. *Avellino, supra*, 330 F.2d at 491; *LiPuma, supra*, 411 F.Supp. at 950–51. The Commission had no duty at that time to execute the warrant and give the petitioner either a probable cause hearing or a revocation hearing.

In his supplemental Memorandum of Law petitioner argues that the policy objectives articulated in *LiPuma* as justifying a delay in execution were not actually achieved in petitioner's case because the state charges were still not disposed of at the time of the revocation hearing. Even assuming petitioner is correct, however, that conclusion does not warrant habeas relief. The Commission's decision to delay execution was lawful at the time, and the Commission was not precluded from relying on the original warrant in the revocation hearing merely because Massachusetts ultimately declined to prosecute the state charges.

The conclusion that a delay in execution of the warrant was not itself unlawful does not end the inquiry, however. It may be that the delay affected the revocation proceeding so as to make it fundamentally unfair to the defendant. *Cf. United States ex rel. Buono v. Kenton*, 287 F.2d 534, 536 (2d Cir. 1961). In considering this possibility, it is helpful to adopt the analysis employed by the Supreme Court in the analogous problem of evaluating claimed deprivations of the right to a speedy trial as guaranteed by the Sixth Amendment. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court identified four factors that were relevant in determining whether that right was violated. *Id.* at 530–32, 92 S.Ct. 2182.

■ The first factor, length of delay, is not extraordinary here. The warrant was issued in October, 1974, and executed in August, 1977, less than three years later.[1] In *Avellino, supra*, the warrant was held in abeyance for two and a half years and in *LiPuma* for two. The second factor, the government's reasons for delay, has already been discussed. Delaying execution of a warrant while other charges are pending is not improper.

■ The third factor, the defendant's responsibility to assert his right, is more problematic. Although, as noted above, a parolee has no right to an immediate revocation hearing when there are pending charges against him, nothing in the regulations in effect then or now would prevent the Commission from holding the revocation hearing before the pending charges

1. Petitioner was incarcerated on July 12, 1975, and the warrant was lodged as a detainer in February, 1976. Under the rule of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), a prisoner who has been convicted of a crime which is the basis for an outstanding violator warrant has no right to a revocation hearing until the end of incarceration. Were the length of delay the dispositive factor in this case, *Moody* might require that the time of incarceration be excluded from the computation of delay. I need not reach that issue, however.

were disposed of. Thus a relevant consideration is whether or not petitioner ever asked for a prompt revocation hearing. The present record in this case does not show that petitioner ever sought and was denied an early revocation hearing on the charges in the original warrant. Nor does he allege that he was unaware of the original warrant and so unable to seek such a hearing. Absent such allegations it is difficult to see how the delay in executing the warrant was fundamentally unfair.

The fourth factor identified in *Barker* is the prejudice to the defendant occasioned by the delay, specifically the prejudice to his ability to defend.[2] Petitioner apparently contends that this prejudice is inherent in delay, for his allegations of prejudice are phrased only in the most generalized and conclusory terms. This is insufficient. Petitioner has not named any witnesses who would have been available if the hearing had been held earlier but who could not be found in August of this year. Nor has he identified any documents that once were, but no longer are, available to bolster his defense to the charges in the warrant. In short, he has failed to allege any specific respect in which he was actually prejudiced by the delay. See *Gaddy v. Michael*, 519 F.2d 669, 673 (4th Cir. 1975); *Robb v. Norton*, 394 F.Supp. 856, 858 (D.Conn.1975).

Therefore, insofar as petitioner's claim relates to the delay in executing the original warrant, the petition is denied. Petitioner is granted leave to refile, however, in the event he (a) can allege that he sought and was denied an earlier hearing or was precluded from seeking it, and (b) can allege specific prejudice resulting from the delay in execution.

## II.

Petitioner's second claim attacks the Commission's power to supplement the original warrant after the end of a mandatory releasee's supervision period. In the present case petitioner's maximum term for the original 1970 sentence expired in August, 1975. His supervision ended 180 days before that, in January, 1975, because petitioner had been mandatorily released pursuant to 18 U.S.C. § 4164. In April, 1975, petitioner was arrested on federal charges and was convicted in October of that year. In December the Commission supplemented the revocation warrant already outstanding against him by adding this conviction. The Commission maintains that the supplement is proper because the conduct underlying the conviction occurred during supervision. Petitioner does not dispute the time of the underlying offense, but instead argues that the Commission is powerless to supplement warrants after supervision ends.

The then applicable statute, 18 U.S.C. § 4205 (1970) (superseded by Pub.L. 94–233, 18 U.S.C.A. § 4213 (Supp.1977)), provided that a warrant for retaking a parole violator could "be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced." If a warrant was issued within the maximum term, nothing in the statute would preclude the issuance of additional warrants within that period. Conversely, the statute did not authorize the Commission to issue any warrant after the expiration of the maximum term, even if it discovered crimes committed during the supervision period. This was made clear in the then applicable regulations.

(b) A warrant for the apprehension of any parolee shall be issued only within the maximum term or terms for which the prisoner was sentenced.

(c) A warrant for the apprehension of any mandatory releasee shall be issued only within the maximum term or terms for which the prisoner was sentenced, less one hundred eighty days.

2. *Barker* identified two other types of possible prejudice that could be caused by delay. 407 U.S. at 532, 92 S.Ct. 2182. The first, "oppressive pretrial incarceration," is not a factor here. Petitioner was released on bond immediately after his arrest in Massachusetts and was at liberty until he was later arrested on independent federal charges. His incarceration is in no way attributable to the delay in holding the revocation hearing. The second potential prejudice to the petitioner is the "anxiety and concern of the accused." Here the "anxiety" was occasioned by the state arrest. I do not believe that the anxiety caused by the additional possibility of parole revocation was significant.

28 C.F.R. § 2.49(b), (c) (1975) (now at 28 C.F.R. § 2.44(c)).

 The issue here is whether the Commission can add new charges to a warrant after the end of the maximum term simply because there is already a properly issued warrant outstanding but as yet unexecuted. There is no authority either in the statute or the regulations for such a practice. The government relies heavily on dicta in *United States ex rel. Carson v. Taylor*, 540 F.2d 1156 (2d Cir. 1976). There revocation was based in part on charges which, although known to the Commission, were not contained in the warrant and which the petitioner learned of for the first time during the revocation hearing. In ruling that the failure to give the parolee notice of the charges was violative of the due process guarantees as enunciated in *Morrissey v. Brewer, supra*, the Court noted that it would have entailed "little inconvenience to the Board to have supplemented the violator's warrant with further written notice apprising [the violator of the charges]." 540 F.2d at 1160.

*Carson* is inapposite to the present problem. There the Commission became aware of the additional charges within the supervision period and the revocation hearing was held within that period as well. Thus the Commission could have issued a second warrant based on the additional charges. The language of *Carson* relied on here merely acknowledges that supplementing the existing warrant with the additional charges would have been sufficient to give a parolee notice. It says nothing about the power to supplement a warrant with additional charges after the end of supervision.

 No case has been cited, nor any found, which deals with the power to supplement warrants after the end of supervision. As noted above, the then applicable statute and regulations and the current regulations provide that no warrants should issue later than 180 days before the maximum term of a mandatory releasee. The

Commission has offered no authority nor any policy justification for a different rule when an unexecuted warrant issued before that date already exists. I therefore conclude that the Commission was without authority to supplement the warrant and that the supplement should be quashed.[3] Since it is by no means certain that the Commission would have ordered revocation solely on the matters set forth in the warrant without the supplement, a new revocation hearing must be held.

It is therefore ORDERED that within sixty days the Commission shall conduct a new revocation hearing based on a warrant that does not contain the supplement of December 22, 1975, provided, however, that if within twenty days the petitioner files in this Court an amended petition pursuant to the first section of this opinion, the revocation hearing shall be stayed pending the disposition of the new petition.

---

3. In view of this decision regarding the supplement, it is unnecessary to consider petitioner's claim that he did not learn of the supplement to the warrant until one week before the revocation hearing and was therefore unable to prepare adequately to meet those charges.