The UNITED STATES of America

v.

Gregory SACKINGER.

No. CR–79–155.

United States District Court,
W. D. New York.

May 7, 1982.

complied with here. *See DiCesare-Engler Productions, Inc. v. Mainman Ltd.*, 421 F.Supp. 116

(W.D.Pa.1976).

Roger P. Williams, U. S. Atty., Buffalo, N. Y. (J. Glenn Davis, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff.

Terrence M. Connors, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Defendant was indicted October 3, 1979 on three counts of transporting forged securities in interstate commerce in violation of 18 U.S.C. § 2314. Pursuant to a plea agreement, defendant pleaded guilty to one count in the Indictment, the remaining counts being dismissed on the government's motion. On September 8, 1980 I sentenced defendant to a term of imprisonment of three years but suspended execution of the sentence and placed defendant on probation for four years. The government now seeks to have defendant found in violation of probation due to his involvement in a burglary at a supermarket in South Dayton, N. Y. on or about February 16, 1981.

Following his arrest February 17, 1981 and indictment March 25, 1981 on burglary charges in the Cattaraugus County (N.Y.) Court, defendant pleaded guilty July 22nd to the crime of attempted burglary in the third degree. The plea agreement in the state court was based on the understanding that defendant would receive a sentence of from one and a half to three years imprisonment and that the state sentence would run concurrently with any term of imprisonment imposed as a result of defendant's violation of his federal probation. The state court initially delayed sentencing defendant in order to permit the federal probation violation proceedings to be conducted. However, the federal government adhered to its unwritten policy to refrain from commencing probation violation proceedings based on criminal charges under state law until the defendant has been sentenced on the state charges (or until some other final disposition of the charges is made). Therefore, defendant was finally sentenced by the state court November 9, 1981.

United States Probation Officer Rodney C. Early commenced the current probation violation proceedings November 23, 1981 by filing a petition for an order to cause defendant's arrest. The government filed an initial petition for a writ of habeas corpus ad prosequendum January 8, 1982. After two writs were issued but returned without service because defendant had been transferred between state correctional facilities, defendant was transferred to federal custody and brought before this court February 22nd pursuant to a third writ. A hearing

was held March 24th with respect to the alleged probation violation. After the parties submitted memoranda of law, oral argument was heard April 26th.

■ Defendant opposes the government's petition to have him found to have violated probation on the grounds that the government unduly delayed commencement of this proceeding. Defendant does not complain of the delay between his arrest in February and his guilty plea in July, but attacks the delay between his plea and the state court's imposition of its sentence in November. Because a federal court lacks the authority to direct that a term of incarceration run concurrently with a term imposed under state law,[1] defendant argues that the government's delay in commencing this proceeding until after he had been sentenced in state court deprived him of the opportunity to have his imprisonment under state law and for federal probation violation run concurrently as was intended by the plea agreement in state court. Defendant claims that such delay violated 18 U.S.C. § 3653 and Fed.R.Crim.P. rule 32.1(a)(2) and denied him due process of law in contravention of the Fifth Amendment to the United States Constitution.

*Section 3653.*

The supervision of probationers is provided for by 18 U.S.C. § 3653. Under that section, the probation officer is empowered to arrest the probationer for cause without a warrant at any time within the probation period. Additionally, the supervising court may issue a warrant for the probationer's arrest based on a violation of probation occurring during the probation period. Such a warrant may be executed by the probation officer or by the United States Marshal for the district in which the warrant was issued or in which the probationer is found. If the arrest is made in any district other than the supervising district, the probationer is to be returned to the supervising district (unless jurisdiction over the probationer is transferred to the district in which he is found) and "detained pending further proceedings in such district." The last paragraph of section 3653 requires that "[a]s speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him."

Defendant's claim that the government has violated section 3653 is based on the section's requirement that the probationer be taken before the supervising court "as speedily as possible after arrest * * *." Defendant argues that where an alleged probation violation is based on state criminal charges for which the probationer has been arrested, the "arrest" to which the last paragraph of section 3653 refers is the arrest for the underlying misconduct—i.e., in the present case, defendant's arrest by state authorities in February, 1981 on charges of burglary. The government contends that section 3653's requirement that the probationer be taken before the supervising court as speedily as possible is not triggered until the probationer is in *federal* custody for a determination whether he has violated probation. Thus, the government maintains that said requirement did not arise until November, 1981.

The government's interpretation of section 3653 is persuasive. Statutory construction must, of course, be accomplished by considering the statute in its entirety rather than by focusing on isolated or particular

---

1. 18 U.S.C. § 4082(a) provides that:
   "A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served."
   Under 18 U.S.C. § 3568, a sentence of imprisonment begins to run from the date on which the individual is received at the penitentiary, reformatory or jail designated for service of the sentence. These provisions have been construed to mean that a federal court lacks the power to direct that a period of imprisonment be served concurrently with a sentence imposed under state law. *E.g., United States v. Huss,* 520 F.2d 598, 602 (2d Cir. 1975); *United States v. Janiec,* 505 F.2d 983, 987 (3d Cir. 1974), *cert. denied* 420 U.S. 948, 95 S.Ct. 1331, 43 L.Ed.2d 427 (1975).

portions thereof. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). When section 3653 is read as a whole, it is clear that the last paragraph refers to an arrest by federal authorities based on a violation of probation, not to an arrest by state authorities on charges which would constitute a basis for finding a violation of probation. Section 3653 determines which district shall have jurisdiction over a probationer and prescribes procedures for effecting the probationer's arrest by *federal* authorities.

Additionally, the portion of section 3653 which immediately precedes the last paragraph states that the probationer shall be detained pending further proceedings in the supervising district. Thus, the apparent purpose of the last paragraph's requirement that the probationer be taken before the court as speedily as possible is to insure that the probationer is not unduly detained in custody by reason of the alleged probation violation.[2] Because defendant was not incarcerated due to the alleged probation violation at any time prior to the sentencing by the state court, the government's delay in commencing the probation violation proceedings until after the sentencing by the state court was not contrary to the underlying purpose of the section. To the extent that section 3653 may also be intended to protect the probationer's ability to defend the violation allegations, such considerations are not implicated where, as here, the probationer has pleaded guilty to the state criminal charges.

■ In this regard, section 3653 is similar to the Sixth Amendment's guarantee that the defendant in a criminal prosecution shall enjoy the right to a speedy trial.[3] In *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Court held that the right to a speedy trial is not triggered until the defendant has been arrested or formally charged with a crime (such as by an indictment or information). Because section 3653 is somewhat analogous to the Sixth Amendment right to a speedy trial, the Court's holding in *Marion* lends further support to my conclusion that the section's requirement that the probationer be taken before the court as quickly as possible arises only when the probationer is in custody based on the alleged probation violation.

Moreover, at least one other court has clearly expressed the view that the "arrest" to which the last paragraph of section 3653 refers is an arrest based on the alleged probation violation, *not* an arrest by state authorities for criminal conduct which may constitute a probation violation. *United States v. Jackson,* 590 F.2d 121, 123 (5th Cir.), *cert. denied* 441 U.S. 912, 99 S.Ct. 2012, 60 L.Ed.2d 385 (1979).

Defendant has suggested that the protection afforded by section 3653 should not depend on whether federal or state authorities first apprehend the probationer. Defendant also argues that the federal government should not be able to avoid section 3653's requirement of a speedy hearing by simply failing to "arrest" the probationer. However, unless the probationer is in federal custody due to the alleged violation of probation, there is no need to protect the probationer from undue federal incarceration. Although delay in the com-

---

**2.** My conclusion that section 3653 is intended only to prevent lengthy incarceration during the pendency of the probation violation proceedings is supported by the section's legislative history. Under a codification of Title 18 in 1948, section 3653 provided:

"Such probationer [arrested by federal authorities for probation violation] shall forthwith be taken before the court * * *." *See,* U.S.Code Cong.Serv., 80th Cong., 2d Sess., 1948 at A535.

Under this previous version, section 3653 could not tenably be construed to require the federal government to commence probation violation proceedings as soon as possible after a probationer had been arrested by state authorities on charges of violating state law. There is no indication that Congress intended to impose such a requirement by amending the section to its current form.

**3.** Because probation revocation proceedings are essentially civil rather than criminal in nature, the constitutional right to a speedy trial is not strictly applicable in such proceedings. *United States v. Williams,* 558 F.2d 224, 226 (5th Cir. 1977).

mencement of probation violation proceedings may impede the probationer's ability to defend against the violation charges, due process guarantees (not here derogated) are adequate to protect the probationer. Defendant's proposed interpretation of section 3653 would also increase the possibility that the federal probation proceedings would impede or interfere with the state's disposition of the underlying criminal charges.

Certainly, defendant has cited no case which supports his argument that section 3653 applies upon a probationer's arrest by state authorities for alleged criminal conduct which could *per se* constitute a violation of probation. *United States v. Companion*, 545 F.2d 308 (2d Cir. 1976), involved a delay following an arrest pursuant to a *federal* warrant for a violation of travel restrictions imposed on a probationer. Because arrests by federal authorities for probation violation and by state authorities for criminal conduct can not be equated for purposes of section 3653, *Companion* is not controlling herein.[4]

Therefore, I conclude that the requirement of section 3653 that the probationer be taken before the court as quickly as possible did not arise until February, 1982 when defendant was taken into federal custody and that said requirement has been satisfied.

*Rule 32.1.*

■ Fed.R.Crim.P. rule 32.1(a) provides:

"(1) Whenever a probationer is held in custody on the ground that he has violated a condition of his probation, he shall be afforded a prompt hearing before any judge * * * in order to determine whether there is probable cause to hold the probationer for a revocation hearing. * *

"(2) * * * The revocation hearing, unless waived by the probationer, shall be held within a reasonable time in the district of probation jurisdiction."

On its face, rule 32.1 applies only when a probationer is held in custody "on the ground that he has violated a condition of his probation * * *." The requirements of rule 32.1 have been met in the present case inasmuch as defendant was not held in custody on such ground until February, 1982.

*Due Process.*

Because I have rejected defendant's arguments based on section 3653 and rule 32.1, I must also consider his due process claim. The Supreme Court has, of course, extended due process protection to probationers who are accused of having violated the conditions of their probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In the present case, I must decide whether the government's delay in commencing this proceeding until after defendant had been sentenced by the state court denied him due process of law.

*Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), was a proceeding for a writ of habeas corpus in which the petitioner sought to dismiss a warrant for federal parole violation on the grounds that he had been denied a prompt hearing with respect to the alleged violation. The petitioner had been convicted of the federal crime of committing rape on an Indian reservation and paroled after serving approximately four years of a ten-year sentence. While on parole, he shot and killed two persons on an Indian reservation and subsequently pleaded guilty to one count of manslaughter and one count of second-degree murder. After petitioner had been incarcerated for the homicides, a federal parole violator warrant was lodged with prison officials as a detainer. The parole violator warrant was not executed, however. Petitioner sought to have the warrant executed so that any incarceration imposed for violation of his parole on the rape conviction could run concurrently with his homicide

---

4. The present case involves an arrest by state authorities on charges of violating state law. Therefore, I express no opinion on the question whether an arrest by *federal* authorities for criminal conduct would constitute an arrest within the meaning of the last paragraph of section 3653. See, *Moody v. Daggett, infra.*

sentences. Petitioner argued that the failure to execute the warrant and to accord him an immediate hearing denied him due process of law. The Court rejected this contention, holding that an immediate hearing was not required.

*Moody* and other cases have been cited for the proposition that the requirements of *Morrissey* and *Gagnon* "are not triggered when the warrant is placed as a detainer at an institution where the probationer or parolee is already in custody awaiting disposal of an intervening charge or serving a sentence for a crime committed while on supervised release." *United States v. Wickham*, 618 F.2d 1307, 1309, n.3 (9th Cir. 1979). Arguably, this holding is controlling in the present case. Certainly, if it would be permissible to wait until a probationer has completed serving his sentence on state charges to institute probation revocation proceedings, it would also be permissible to wait until the probationer has been sentenced by the state court.

However, *Moody* may tenably be distinguished from the present case. The Court in *Moody* rejected the petitioner's argument that he had been prejudiced by the delay in the parole violation proceedings because he had lost the *"opportunity"* for concurrent sentencing. *Moody v. Daggett, supra*, at 87, 97 S.Ct. at 278. Here, defendant claims that his guilty plea in state court was premised on the understanding that the federal and state sentences would run concurrently. Thus, he claims to have a *right* to concurrent sentencing under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Nevertheless, I conclude that the delay in this proceeding did not violate defendant's due process rights.

Defendant persuasively argues that, in some respects, delaying commencement of this proceeding until after he had been sentenced in state court was not justified. Ordinarily, the government's forbearance in commencing probation violation proceedings serves various salutary purposes, such as (1) permitting the probationer to clear himself of the criminal charges with the likely result that the probation violation proceedings will not be held, (2) avoiding the need to have the probationer testify in the probation violation proceeding as to matters which may prejudice him in the criminal case, (3) avoiding inconsistent findings in the probation proceedings and the criminal case and/or (4) avoiding prejudice to the probationer's ability to defend the criminal charges by removing him from the jurisdiction where the criminal prosecution is occurring. *See, LiPuma v. Gengler*, 411 F.Supp. 948, 950 (S.D.N.Y.1976). If the probationer is convicted of the underlying criminal charges, the government's burden of proving the probation violation is also eased.

Defendant's plea of guilty in July, 1981 operated as a conviction of the crime of attempted burglary, but there was no formal judgment pursuant to the conviction until defendant was actually sentenced in November. N.Y.Crim.P.L., §§ 1.20(13), § 1.20(15). At any time prior to sentencing, the court in its discretion could have permitted defendant to withdraw his guilty plea. *Id.*, § 220.60(3). Thus, even though defendant had been convicted, there was until defendant had actually been sentenced in November no final judgment in the state court which would technically have operated as a collateral estoppel in this proceeding. Admittedly, defendant's guilty plea (which could be proven in this court merely by introducing a transcript of the proceedings in state court) would certainly be of considerable weight in determining whether defendant had in fact violated the conditions of his probation. From an evidentiary point of view, I see little significant difference between defendant's conviction by means of a guilty plea and the formal imposition of sentence pursuant to such conviction. Moreover, once the defendant has pleaded guilty to the underlying criminal charges, the considerations elaborated in *LiPuma v. Gengler, supra*, do not favor continued forbearance of the probation violation proceedings. Although some complication may arise in the probation violation proceedings if the defendant changes his plea in the state court, such complications do not appear a substantial risk.

■ Nevertheless, apart from these considerations, the government, has an interest in imposing some penalty for a violation of probation which is distinct from the state's interest in punishing criminal offenders and which justifies delaying the commencement of probation violation proceedings until *after* the state has imposed its sentence. *See, United States v. Lustig*, 555 F.2d 751, 753 (9th Cir. 1977), *cert. denied* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978). In this manner, the government can seek to have the state sentence and any federal sentence which may be imposed run consecutively. *Avellino v. United States*, 330 F.2d 490, 491 (2d Cir. 1963), *cert. denied* 379 U.S. 922, 85 S.Ct. 280, 13 L.Ed.2d 336 (1964). Thus, the possibility that a probationer may lose the opportunity to serve the state and federal sentences concurrently is simply not the type of prejudice which is subject to the protection of the due process clause in a probation violation proceeding. *United States v. Wickham, supra*, at 1310. Under *Santabello v. New York, supra*, defendant may be entitled to have the state court impose its sentence concurrent with federal incarceration. That, however, is a matter between defendant and the state which does not involve either the federal government or this court.

Even if defendant has been unduly prejudiced by the delay in the commencement of this proceeding, such prejudice is not attributable to the federal government. Although Probation Officer Early knew that defendant had pleaded guilty to the state charges and that delaying this proceeding until after defendant had been sentenced by the state court would deprive defendant of the opportunity for concurrent sentencing, he was not aware that defendant's plea arrangement actually called for concurrent sentencing. If defendant feared the imposition of consecutive sentences by reason of the delay in this proceeding (a possibility which should have been apparent to his attorney), he could have sought to withdraw his guilty plea at any time before the state court imposed its sentence. N.Y. Crim.P.L. § 220.60. Even at this time, defendant may bring a motion in the state

court to set aside the sentence imposed by it. *Id.*, § 440.20. Defendant argues that such a motion would involve needless judicial proceedings. However, the availability of an adequate remedy in the state court defeats defendant's claim of prejudice.

Finally, defendant has suggested that as a matter of discretion I should give effect to the plea agreement reached in the state criminal prosecution. I regard that agreement as a matter entirely separate and distinct from the question of what penalty should be imposed as a result of defendant's violation of federal probation.

■ Alternatively, defendant asks that I exercise my discretion to declare that, despite his commission of a criminal action while on probation, he not be found to have violated the terms of the probation I imposed upon him. Giving full consideration to such discretionary leeway and upon due consideration of all that is before me and upon due deliberation, it is hereby FOUND and ORDERED that defendant has violated the terms of his probation. It is further ORDERED that an updating of defendant's earlier presentence report shall be prepared and that defendant shall stand before me for sentencing for such violation of probation at 3:00 p. m. on Monday, May 17, 1982.